831 F.2d 298
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Garry Joe WARD, Jimmy Ray Coffelt, Robert Gerald Berry,
Henry Thomas Nickolson, Defendants-Appellants.
 Nos. 87-5086 to 87-5089
 United States Court of Appeals, Sixth Circuit.
 October 5, 1987.
 
 Before ENGEL and RYAN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 These consolidated appeals are from judgments entered upon conditional guilty pleas made by defendants Ward, Coffelt, and Nickolson pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure. The Rule permits defendants to reserve the right to appeal issues decided adversely to them in their motions to suppress. The factual circumstances leading up to the arrest of these defendants and the issuance and execution of the search warrants under challenge here are quite complicated and are set forth in an abbreviated form.
 
 
 2
 Early in September, 1986, one Hildreth and other unidentified individuals purchased amphetamine precursors from the Scientific Laboratory & Equipment Company in Humble, Texas, a suburb of Houston. The purchase was made with $12,000 in cash, which was probably what aroused the interest of drug enforcement agents in Texas. Thereafter DEA agents initiated surveillance at Scientific Chemical and provided that company with a can of ether containing an electrical tracking device or 'beeper'. The can of ether was then to be placed with the next order of chemicals by Hildreth. With the use of the beeper, authorities traced a second order to a yellow, Ryder rental truck that Hildreth had used to pick up the chemicals from Scientific Chemicals. Thereafter, through a complicated scenario of events the truck was turned over to defendant Garry Joe Ward. Ward then drove the truck to the Classic Inn in Coffman County, Texas where he was seen meeting with individuals in a Chevrolet pickup bearing Tennessee plates. A registration check of the license plate revealed that the pickup was registered in the name of Rebecca Berry. The same pickup was later seen at the Outlaw Bar & Restaurant, a business owned by George Dennis Berry. Later the pickup made its way to the residence of George Dennis. The Berrys were apparently well known to DEA agents in Texas and were the subject of an ongoing narcotics investigation by authorities in Tyler, Texas as well.
 
 
 3
 Texas narcotics detectives joined the DEA surveillance team in Tyler and the group followed the Ryder truck as it pursued its course from Coffman County, Texas through several states into southeast Tennessee, where defendant Ward stopped on the evening of September 9, 1986 at the Holiday Inn on the outskirts of Chattanooga. Visual surveillance of the Ryder truck resumed the following day until it was lost when defendant Ward drove the Ryder truck into a heavily wooded driveway and out of sight. At the same time the authorities lost contact with the beeper. Thereafter, in order to reestablish visual surveillance from the air, an agent of the Tennessee Bureau of Investigation (TBI) hired a pilot and his small plane. Once in the area where the truck had been seen, the TBI agent visually observed the Ryder truck on a hilltop which was off to the right. The parties dispute the extent to which surveillance was assisted or continued through the use of the beeper, but suffice it to say that the trial judge concluded that shortly after the aircraft had taken off from the Marion County Airport in Tennessee, TBI agent Copeland spotted the Ryder truck in a clearing at the top of a hill near Francis Spring Road. While the vehicle was not visible from the road, it was apparently visible from the air. The trial judge also acknowledged that 'the beeper confirmed the location of the truck'.
 
 
 4
 Copeland took several photographs and made visual observations from the plane showing the location of buildings on the site and access roads and the like. Thereafter agents obtained the warrant from the United States Magistrate in Chattanooga for the Marion County property. The warrant was executed on the morning of September 11th by DEA agents and officers of other law enforcement agencies, and produced the immediate arrest of defendants Nickolson and Ward. A highly sophisticated amphetamine laboratory was found in the portable building on the premises, together with sufficient precursor chemicals to manufacture amphetamine of a value estimated as between $3,244,000 and $8,659,000. Other arrests followed. A 1984 Lincoln Continental arrived at the premises driven by defendant Robert Gerald Berry, who was accompanied by his wife and their infant son. Shortly thereafter a 1978 Cadillac arrived bearing Luther G. Berry and his wife and child. A search of both vehicles produced incriminating evidence: marijuana and cash in the Lincoln and a cache of weapons in the trunk of the Cadillac. Meanwhile, defendant Jimmy Ray Coffelt had arrived upon the premises driving a 1985 Chevrolet Silverado pickup truck. When Coffelt observed the police vehicles at the entrance of the premises, he attempted to retreat but was halted by a deputy who thereafter contacted Marion County Sheriff John Uselton. Officer Uselton was familiar with Coffelt, knew his criminal record and background, and also was aware that a pickup truck was being used at the laboratory site which was owned by Coffelt.
 
 
 5
 In their separate but generally coordinated defenses, the defendants challenged the arrests and several searches and seizures which produced the evidence against them. Generally, they challenged the probable cause assertions of the government both in connection with the surveillance and in connection with the issuance of the warrants, based in large part upon the break in the surveillance which occurred when the Ryder rental truck disappeared from sight and the beeper could no longer be monitored. Likewise, they insist that the use of a beeper to the extent disclosed by the record here was violative of the standards set by the United States Supreme Court in United States v. Karo, 468 U.S. 705 (1984), because, they claim, the authorities used the beeper to follow the evidence inside the curtilage and to pursue its location into and within the area protected from unreasonable search and seizures protected by the curtilage rule. Further, defendants assert that the authorities were less than candid in providing information to the issuing magistrate concerning the circumstances which purportedly constituted probable cause. Particularly they claim that the authorities were guilty of bad faith in failing to disclose the extensive use of the beeper, and in misrepresenting or exaggerating the quality of information which they purported to possess concerning the presence of evidence of crime on the premises sought to be searched.
 
 
 6
 Without exploring in greater detail the skillful and vigorous arguments which defendants' counsel have made on their behalf, it is sufficient to say that our examination of the record fully confirms the correctness of the decision of United States District Judge R. Allen Edgar as expressed in his memorandum opinion and order filed in the district court on December 1, 1986. We particularly find that the use of the beeper was not violative of United States v. Karo, supra, but is in line with the limitations placed upon such use in United States v. Knotts, 460 U.S. 276 (1983).
 
 
 7
 Accordingly, the judgment of the district court is AFFIRMED.